## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Cr. No. 10-1445 RB |
| ) | |
| JAMES W. LANKFORD, ) | |
| ) | |
| Defendant. ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

THIS MATTER comes before the Court on Defendant James W. Lankford's Motion to Suppress Statements. (Doc. 65.)  Defendant argues that when he was questioned by police at the Lordsburg Police Department on February 19, 2010, he was in acute pain as the result of a gallbladder condition, and therefore, it was impossible for him to knowingly waive his *Miranda* rights or appreciate the nature of the questions he was being asked.  Accordingly, Defendant requests that any statements made by him at that time should be suppressed.  Having carefully considered the parties' filings, the relevant case law, and the evidence presented at the hearing on October 4, 2010, the Court denies Defendant's motion.

## FINDINGS OF FACT

1.      At approximately 12:55 a.m. on February 17, 2010, Defendant James W. Lankford and

Michael Jones were stopped by officers from the Lordsburg Police Department for a traffic

violation on Motel Boulevard in Lordsburg, New Mexico.  Mr. Jones was driving

Defendant's Ford F-150 pick-up truck.  Based on a tip from a confidential informant and

their observations during the traffic stop, the officers suspected Defendant and Mr. Jones of

transporting methamphetamine and seized the truck.  The truck was impounded, a search warrant was obtained, and the officers found 70.31 grams of methamphetamine in the pickup truck's bed.

2.      On February 19, 2010, Defendant was arrested at his house pursuant to a valid arrest warrant and taken to the Lordsburg Police Department.  When Defendant arrived at the police station, he was provided with a standard U.S. Immigration and Customs Enforcement *Miranda* Statement of Rights and Waiver Form.  Defendant was asked if he understood the form and signed it.  He was then questioned by officers.  Assistant District Attorney Armando Perales for the State of New Mexico was also present during Defendant's arrest and subsequent interview, and he testified before the Court at the motion hearing in this case on October 4, 2010.

3.      During the police interview, Defendant stated that Mr. Jones had contacted him earlier that week about using his truck to go to Tucson to pick up a load of methamphetamine. Defendant indicated that Mr. Jones paid him $100 to use his truck to transport the meth. In Tucson, Mr. Jones stopped at an apartment complex to meet with someone named Juan and purchase the meth.  Mr. Jones went into the complex, and when he returned, he hid the meth in the back of the pick-up.  On the way back from Tucson, Defendant indicated that the two stopped off at a casino.  Defendant further stated that he had allowed Jones to use his truck three or four times in the past for the same purpose.

4.      Defendant alleges that, as a result of a gallbladder condition, he was in acute pain throughout the interview, and therefore, it was impossible for him to knowingly waive his *Miranda* rights or to appreciate the nature of the questions he was being asked.

5.      At the hearing, Mr. Perales testified that he did not observe any obvious manifestations of

2

pain by Defendant during the arrest or interview.  Additionally, Defendant did not complain

of any health problems or issues at that time, did not complain to the officers that he was in

pain—let alone, acute pain—and he did not request that the interview be postponed due to

his pain.  Mr. Perales indicated that when Defendant was arrested, it looked like he had just

woken up, but otherwise, he was understanding, cooperative, and appeared lucid at all times.

Defendant responded to the officers' questions in a normal tone of voice, and even smoked

a cigarette during the interview at the police station.

6.    After the interview, Defendant's condition worsened, and while incarcerated at the Luna

County Detention Center, he was taken into surgery and had his gallbladder removed.

## <u>CONCLUSIONS OF LAW</u>

1.    "Waiver of one's Fifth Amendment privilege against self-incrimination requires that the

individual 'voluntarily, knowingly and intelligently' waive his constitutional privilege."

*United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002) (quoting *Miranda v. Arizona*,

384 U.S. 436, 444 (1966)).

> *First*, the relinquishment of the right must have been voluntary in the sense
> that it was the product of free and deliberate choice rather than intimidation,
> coercion, or deception.  *Second*, the waiver must have been made with a full
> awareness of both the nature of the right being abandoned and the
> consequences of the decision to abandon it.  Only if the totality of the
> circumstances surrounding the interrogation reveal both an uncoerced choice
> and the requisite level of comprehension may a court properly conclude that
> the Miranda rights have been waived.

*Colorado v. Spring*, 479 U.S. 564, 573 (1987).

2.    Defendant does not suggest that the police were in any way coercive or that they somehow

used Defendant's medical condition to extract a confession.  Accordingly, there is no

indication that Defendant's confession was not voluntary.  Indeed, nowhere in his

3

memorandum does Defendant suggest that his statement was involuntary or coerced.

3.      In order for a confession to be "knowing," the defendant must have been sufficiently coherent and in possession of his mental faculties that he understood "both the nature of the right being abandoned and the consequences of the decision to abandon it." *Spring*, 479 U.S. at 573; *see also Morris*, 287 F.3d at 989 ("No doubt a defendant's mental capacity—as affected by pain, the effects of pain medications, and the post-traumatic stress of being shot—is relevant to whether or not a person could have understood both the nature of the right being abandoned and the consequences of the decision to abandon it.").

4.      Most Tenth Circuit cases dealing with the issue of whether a defendant "knowingly" abandoned his rights involve defendants who were under the influence of intoxicating drugs or powerful pain medications. *See, e.g.*, *United States v. Curtis*, 344 F.3d 1057, 1066–67 (10th Cir. 2003) (concluding that although defendant had consumed marijuana, crack cocaine, and alcohol earlier in the day, he appeared lucid, and the admission of his confession at trial should be upheld); *Morris*, 287 F.3d at 989 (concluding that defendant who was hospitalized recovering from double gunshot wounds and taking pain medications was sufficiently lucid to waive his rights); *United States v. Hack*, 782 F.2d 862, 866 (10th Cir. 1986) (concluding defendant recovering from a gunshot wound through the mouth and being treated with Novacain knowingly waived his rights).  Defendant failed to cite a single case in which pain alone was considered sufficient to make a confession involuntary.

5.      Defendant has not asserted that he was intoxicated or taking any form of pain medications; rather, Defendant argues that he was in such excruciating pain that it affected his mental faculties, and he was incapable of making a knowing waiver of his rights.  However, based on the facts before the Court, Defendant appeared lucid throughout the interrogation, and

4

there were no objective indications (stumbling, slurred speech, etc.) that he was intoxicated or mentally impaired.

6.    Standing alone, Defendant's bare assertion that he was in acute pain did not render him incapable of making a knowing and intelligent waiver of his rights, as evidenced by the numerous cases in the Tenth Circuit (and elsewhere) upholding waivers by defendants who appeared lucid to officers, although, at the time, they were under the influence of pain killers or other intoxicating substances. *See, e.g.*, *Curtis*, 344 F.3d at 1066–67; *Morris*, 287 F.3d at 989;  *United States v. Cristobal*, 293 F.3d 134, 142–43 (4th Cir. 2002).  In other words, police officers are not required to be mind readers, and if Defendant did not show any objective manifestations of mental impairment or indicate to officers that he could not proceed with the interview, there is no evidentiary basis upon which this Court can find Defendant's waiver was anything other than knowing and intelligent.

7.    Consequently, the Court concludes that Defendant's post-*Miranda* statements to the police were made voluntarily, knowingly and intelligently.

**WHEREFORE,**

    **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Statements (Doc. 65) is **DENIED**.

**ROBERT BRACK**
**U.S. DISTRICT COURT JUDGE**